State vs. Spell.

## No. 9547.

### THE STATE OF LOUISIANA vs. STRICKLAND SPELL.

Proof of previously communicated threats against the life of the accused by the deceased in cases of homicide, is inadmissible unless preceded by *proof* of some assault or hostile demonstration by the deceased against the accused at the time of, or immediately preceding the killing.

The question of the admissibility of such evidence is within the exclusive province of the trial judge, who must be satisfied that proper foundation has been laid before admitting the evidence, and who has the legal discretion to disbelieve testimony which to his mind appears incompatible with the proven facts and circumstances of the case.

Rulings on this point in the cases of Ford, Labuzan and Janvier, 37 Ann., re-affirmed. An accused cannot be allowed to introduce as evidence his own declarations of motives and intentions connected with the killing, made to another person previous to the homicide.

APPEAL from the Twenty-fifth District Court, Parish of Vermilion. *DeBaillon*, J.

*M. J. Cunningham*, Attorney General, *R. O Smedes*, District Attorney, and *W. B. White*, Associate Counsel, for the State, Appellee:

1. A statement made by the accused a few moments before the killing is inadmissible to prove the prisoner's object in being at the place when the killing occurred. The declaration is self-serving. 30 Ann. 538; Wharton's Cr. Ev. §§ 690, 692, 693.

2. Evidence of threats communicated or uncommunicated, made by the deceased against the accused, or of attempts made by deceased at waylaying the accused, prior to the day on which the homicide was committed, is inadmissible unless the proper foundation has been laid by establishing a hostile demonstration on the part of the deceased against the prisoner, sufficient to disclose an intention on the part of the deceased to carry those threats into execution. Wharton, Homicide, §§ 482, 605, 606; Wharton Cr. Ev., § 68, 757; Desty Cr. Law, § 128 a.; 5 Ann. 490; 6 Ann. 420, 554; 14 Ann. 827; 32 Ann. 1084; 33 Ann. 1087; 34 Ann. 1078; 35 Ann. 71; 36 Ann. 81, 859; 37 Ann. 460; 36 Ann. 148.

3. In order to bring before this Court the ruling of the court *a qua* refusing to grant an application for a new trial, and also refusing to charge as requested by the defense, formal bills of exceptions should have been taken thereto. 34 Ann. 881; 35 Ann. 543, 770, 742, 769, 823.

*W. W. Edwards* for Defendant and Appellant:

When there have been threats, accompanied with an attempt to kill, and the party in danger believes, and has the right to believe, he can escape in no other way except by killing his foe, he is not obliged when he casually meets him to fly for safety, *nor to await his attack*. Bohanan vs. Com., 8 Bush, 481; Wat. Crim. Dig., p, 315, No. 663; Cotton vs. State, 31 Miss. 504; Granger's case, 5 Yerger, 459.

In homicide, when there is any evidence going to show excuse or extenuation, it is proper to go to the jury. Whar. Crim. Ev. 9th Ed., § 335 and note 2, under § 334; 9 Met. 93,

All acts and sayings immediately connected with the principal act form part of the *res gestæ*, as the case of the Philadelphia riots, and are admissible. Whar. Crim. Ev. § 262 ; Cowen and Hill's Notes to Phil. Ev., Vancott's Ed. vol. 3, part I, p. 213, *et seq.*

Any fact which tends to prove the real motive of the defendant in killing the deceased, is relevant evidence, whether offered by the State or by defendant. Flanagan vs. State, 46 Ala. 703; also 1 Archb. Pl. and Pr., p. 812 Pomeroy's Ed.; Stokes vs. People, 5 N. Y. 174.

If defendant negligently formed an erroneous opinion as to the necessity of killing, it is manslaughter; but if the opinion was not negligently formed, though erroneous, he is justifiable, Whar. Cr. Law, 9th Ed.. §§ 492 and 493.

Uncommunicated threats are admissible to corroborate other threats communicated (when the latter are admissible.) 1 Arch. Cr Pl. and Pr. pp. 809, and 811, Pomeroy's Ed.; see also People vs. Stokes, 53 N. Y. 174.

The opinion of the Court was delivered by

POCHÉ, J. The defendant appeals from a conviction of murder without capital punishment, and he relies on errors to his detriment, which he sets forth in seven bills of exception.

All the grounds of his complaint, although embraced and detailed in numerous bills, may easily be summarized into and discussed under the heading of one general principle.

The pivotal point of his complaint involves the alleged error of the trial judge in excluding the testimony of several witnesses, by which the accused intended to show repeated threats against his life by the deceased, and a conspiracy between the latter and another person to kill the accused by waylaying him, and thus to perpetrate a cold-blooded assassination.

The reasons of the judge for his course are included mainly in the first bill, to which he refers in all the subsequent bills contained in the record.

The substantial ground which he advances is the failure of the accused or of his counsel to have laid the proper foundation for such proof, by showing that the deceased had made some assault on his slayer or some hostile demonstration against him at the time of, or immediately preceding, the killing.

The judge informs us in his statement subjoined to the bill, that the proffered evidence had reference to alleged threats and acts which had preceded the homicide by several days, and that no proof had been made of an apparent intention of the deceased to carry any of the alleged threats into execution when he met the accused on the occasion of the homicide; the meeting took place in a prairie in broad daylight, and the deceased was shot down by the defendant, in the very act of begging for his life.

Such proof of the manner in which the homicide occurred, in the absence of any proof of any preceding assault on his slayer or of any hostile demonstration against him, on the part of the deceased would, in the light of well settled jurisprudence, seem to have left to the trial judge no other alternative but to exclude the proffered testimony.

But counsel for the accused submits that the judge is in error in his appreciation of preceding evidence which did show hostile demonstra-

tions on the part of the deceased and of his co-conspirator, against the accused, when they all three met in the prairie.

And counsel further argues that the trial judge simply usurps the functions of the jury when he claims the right of judging of the nature of the evidence as preliminary to the introduction of testimony of alleged threats on the part of the deceased. The argument is quite obsolete when tested under the established rules of criminal jurisprudence.

This question was maturely considered by us in the recent case of Ford, 37 Ann. 443, which has perhaps not yet reached counsel for the accused. We said on that subject: "In passing on such a question, the trial judge must of necessity be clothed with the authority to decide whether a proper foundation has been laid for the proffered evidence, and that authority necessarily includes the discretion to ignore and not consider testimony which his reason refuses to believe."

We will not do the injury to the district judges of the State of supposing, with counsel for the accused, that any one of them can be found, so devoid of all sense of duty as to secure conviction of an accused by designedly excluding testimony which might be favorable to him. If there be such a judge, his case should be dealt with in other proceeding, for which the Constitution has made ample provision, but the issue cannot be met in an appeal which merely involves the correctness of his rulings.

The rule laid down in the Ford case was not without precedent, and it has been subsequently followed by this Court. State vs. Labuzan, 37 Ann. 490; State vs. Janvier, 37 Ann. 644.

In the case of Janvier the district judge was upheld in his admitted refusal to give credence to the statements of two witnesses in support of a hostile demonstration, on the ground that their testimony appeared "improbable in itself, and inconsistent with all the proven facts and circumstances of the case." * * *

In one of the bills the trial judge is charged with error in excluding testimony tending to show that two days before the homicide the defendant had stated to the proffered witness that the deceased and his co-conspirator were lying in wait in the woods for the accused, and that the latter was actually afraid to go by alone. What a convenient defense would there be afforded to murderers in their yearning desire to remove their enemies! Counsel's argument that such a statement, made two days before the killing, is admissible as evidence to show the state of the mind of the accused, needs no other refutation than a mere mention.

The same answer is sufficient to meet the complaint against the exclusion of testimony consisting of a statement of the accused to the

witness a short time before the killing, that his object in going to that spot was to hunt for a lost pistol. It was by no means part of the res: gestæ, as erroneously argued by counsel, and surely the witness could. not know the object of the accused in going to that prairie at that par-- ticular time. State vs. Ford, 37 Ann. 462.

Our examination of the record has disclosed to our entire satisfaction that the accused had had a fair and impartial trial.

Judgment affirmed.